(73 Misc. Rep. 622.)

## CONVERSE v. CONVERSE.

(Supreme Court, Trial Term, Cayuga County. October, 1911.)

WILLS (§ 825*)—RIGHTS OF LEGATEES—CHARGE ON PROPERTY—RELEASE.

Where a will devises to the testator's sons land, subject to a charge of a certain amount, the interest to be paid to a fourth son annually during life, and the principal to his legal heirs at his death, and two of the devisees convey their interests in the land to the third, and he agrees with the fourth to pay him a less sum annually for life, in order to settle differences existing between them, the heirs of the grantee, who have entered into possession of the land, are liable for the continued payment of the annuity, and, upon the land diminishing in value, cannot relieve themselves from liability by offering to convey the land to the annuitant, or to lease it for his benefit.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2124–2127; Dec. Dig. §. 825.*]

Action by George Converse against Harry Converse for the construction of a will. Judgment for plaintiff.

Affirmed in 131 N. Y. Supp. 1109.

Amasa J. Parker, for plaintiff.
Willis E. Ellis, for defendant.

SAWYER, J. Prior to the 16th day of December, 1868, one Josiah Converse died in the county of Cayuga, leaving a last will and testament on that day probated, which, among others, contained the following clause:

"Fifth. I will and devise to my sons Charles, William H., and Josiah, Jr., the south half of my said homestead farm, charged with the payment of the sum of $3,000.00 and interest from the time of my decease, as follows, namely: The interest thereon to be paid annually to my son George for and during the term of his natural life, the principal to be paid on the decease of my said son George to the legal heirs of my said son George, charged as aforesaid to my said sons Charles, William H., and Josiah, Jr., in fee to them equally, share and share alike."

Subsequently, by deed dated March 10, 1879, Charles Converse conveyed his interest in the 100 acres of land which constituted said "south half" to Josiah Converse, Jr.; and thereafter, and on or about the 12th day of November, 1880, William H. Converse also conveyed his interest therein to him; so that, subject to the charge thereon, the entire title and ownership became vested in the son Josiah Converse, Jr.

Whether the original devisees went into occupancy of the farm following their father's death, or whether they, or either of them, were ever in actual possession thereof down to April 2, 1884, is not clear; but upon that day, by an instrument in writing, it was agreed between the said Josiah Converse, Jr., and this plaintiff, the said George Converse, that, from and after the 1st day of June following, Josiah Converse, Jr., should have the full and complete possession thereof, and that he should pay to the said George Converse, during the term of his natural life, the sum of $150 annually upon the 1st day of December in each year.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

It would seem that, at the time of making this agreement, the said George Converse was in actual possession of the land, that differences had arisen between the brothers as to their respective rights, and that this agreement was made for the purpose of composing those differences and establishing a basis of future amicable dealings therewith.

Following this agreement, Josiah Converse, Jr., took possession of the lands and thereafter occupied the same down to the time of his death, which occurred May 7, 1888. He died intestate, and the lands descended, subject to the charge thereon made in the will of his father, unto his widow, Margaret A. Converse, and his children, Jennie Daboll, Charles Converse, and Harry Converse, this defendant. They retained possession and use of the premises until about the 24th day of July, 1901, when the defendant, Harry Converse, by means of a quitclaim deed, bought the interest therein of his mother and of his brother and sister; and from that time to the commencement of this action he continued in sole and undisputed possession. After June 1, 1884, plaintiff neither had nor claimed to have any rights in the land, except as the same stood as security for the stipulated interest payment of $150 a year; and ever thereafter, to and including December 1, 1908, that annual payment was faithfully made, when due, by the various persons from time to time owning and using the land.

Upon the 25th day of October, 1909, defendant caused to be served upon plaintiff a notice wherein he recited that, owing to the decrease in the value of the real estate, and by reason of the fact that the income derived therefrom was insufficient to warrant its payment, he should thereafter refuse to pay $150 per year; but would, instead, convey the farm to plaintiff by quitclaim deed, or, in case of his refusal to accept such deed, would lease the premises for the best sum obtainable and pay to him the net proceeds of such renting.

This action is brought to recover from defendant, personally, the $150 claimed due December 1, 1909.

Defendant does not deny plaintiff's right to recover the interest upon the sum of $3,000 charged for his benefit. against the property out of the property itself, but contends that he cannot be called upon, personally, for its payment.

Under the common law the beneficiary of such a provision as this could only enforce his claim against the land charged with its payment, and no personal action would lie therefor against the devisee. This holding has, however, been modified; and for many years the courts have consistently held that, when there was a promise by a ·devisee to pay the legacy charged, either express or implied from his entering into possession of the land and accepting the benefits under the will for him provided, the rule of the common law did not apply, and he could be held, personally, for its payment. Gridley v. Gridley, 24 N. Y. 130; Brown v. Knapp, 79 N. Y. 136; Dinan v. Coneys, 143 N. Y. 544, 38 N. E. 715.

Many cases have been called to my attention by counsel upon either side as bearing upon the proposition here presented. All have been carefully examined and do not need citation or comment at this

time, because of my conclusion that this case must be determined under the modified rule mentioned.

It is conceded by both parties that the object of the contract of April 12, 1884, between this plaintiff and Josiah Converse, Jr., was to quiet the possession of the premises in Josiah and reduce the interest payment from $210 a year to $150 a year; in other words, the plaintiff abandoned all his claims in exchange for a specific promise that he should thereafter be assured regular payments of his interest at the rate of 5 per cent. per annum. Whatever the situation prior to the making of this contract may have been thereafter, during his lifetime Josiah, Jr., was, under the contract and the adjudications above referred to, personally liable for that yearly payment; and, if he had lived until now, this action could have been maintained against him.

The defendant, however, insists that this personal liability of Josiah, Jr., did not survive as against his heirs, and invokes the rule that an heir is only liable for the debts of his decedent to the extent of the property which he inherits, and that the creditor's remedy is only against the estate, or the inherited property in the possession of the heir.

My attention is not called to a case where the precise question here presented has arisen; and, so far as I learn, it is entirely novel.

It will be observed that, in some particulars, this claim for annual interest differs from an ordinary debt; but I am of the opinion that the personal obligation of Mr. Converse, under his express promise, could only have been enforced against his estate, or against his heirs from the property they inherited from him.

If the defendant has become personally liable for the payment of this interest, that liability can only arise out of his implied promise, and cannot in any manner be predicated upon the contract with his father above referred to.

Upon the death of Josiah Converse, Jr., aside from a possible claim against his estate under the written contract, plaintiff was in exactly the same position he occupied at the death of his father; his legacy of annual interest was recoverable out of the land upon which it was charged, and there it stopped.

The heirs of Josiah Converse, Jr., of whom defendant is one, and, after his purchase from them, this defendant alone, in their relation to this land and to plaintiff, were the direct successors of, and stood in the shoes of, the original devisees and bound by the same rules of law as were applicable to them. The land came to them subject to the charge under the will of Josiah Converse the elder, which provided for the payment of this annual interest to plaintiff during his lifetime. The testator must have contemplated that one or all of the original devisees might by death or sale become divested of their interest in the land prior to plaintiff's death, and have intended that the liability of payment should continue to whosoever under them might then assume the possession and accept its benefits.

Had these heirs of Josiah Converse, Jr., seen fit, they could have avoided personal responsibility and left plaintiff to secure his rights out of the land upon which they were charged as a lien. Instead of

so doing, either by abandoning the land or by specific repudiation of personal liability, or by in any manner indicating to plaintiff their intention of changing his relations, they accepted it as an inheritance from their father, subject to the annual charge which he had theretofore met; they enjoyed its benefits, and under the law they thereby impliedly promised to pay the legacy of plaintiff as it became, from time to time, due. This obligation was met until the sale to defendant.

He thereafter, for many years, without question or objection, accepted and enjoyed the provisions made by his grandfather for the original devisees whose direct successor in interest he was. This he did with full knowledge of the interest charge reserved for the benefit of plaintiff, and by his voluntary payments of that interest as it became due he acquiesced in and ratified the rights of plaintiff. His situation differs from that of his father only in this, while the father was obligated personally for the payment of the interest upon an actual promise, this defendant has become so obligated by the implied promise involved in his acceptance of the benefits of the original devise.

I think this conclusion to be not only within the law as stated in the cases hereinbefore referred to, but to be equitable as between the parties. Defendant and those under whom he claims having during all these years, when it was concededly profitable, retained for themselves the use and benefit of the land, ought not now to be permitted to stand aside and allow the burden of an anticipated loss to fall upon the plaintiff, especially when he is the one whom their common ancestor so carefully sought to guard against loss.

In view of a comment of counsel upon the trial, it is proper, also, to say that the question of the payment after the death of plaintiff of the $3,000 of principal has not been considered, and my conclusion here is not an expression of opinion upon that subject.

Judgment directed for plaintiff, with costs.